Titone, J.
(dissenting). The majority’s holding represents a compromise position that neither comports with the fundamental principles of tort compensation nor furnishes a satisfactory, logically consistent framework for compensating non-pecuniary loss. Because I conclude that loss of enjoyment of life is an objective damage item, conceptually distinct from conscious pain and suffering, I can find no fault with the trial court’s instruction authorizing separate awards and permitting an award for "loss of enjoyment of life” even in the absence of any awareness of that loss on the part of the injured plaintiff. Accordingly, I dissent.
It is elementary that the purpose of awarding tort damages is to compensate the wronged party for the actual loss he or she has sustained (1 Minzer, Nates, Kimball, Axelrod & Gold-stein, Damages in Tort Actions § 1.00, at 1-3). Personal injury damages are awarded "to restore the injured person to the state of health he had prior to his injuries because that is the only way the law knows how to recompense one for personal injuries suffered” (Romeo v New York City Tr. Auth., 73 Misc 2d 124, 126; see, Thompson v National R. R. Passenger Corp., 621 F2d 814, 824, cert denied 449 US 1035). Thus, this court has held that "[t]he person responsible for the injury must respond for all damages resulting directly from and as a natural consequence of the wrongful act” (Steitz v Gifford, 280 NY 15, 20).
The capacity to enjoy life — by watching one’s children grow, participating in recreational activities, and drinking in the many other pleasures that life has to offer — is unquestionably an attribute of an ordinary healthy individual. The loss of *259 that capacity as a result of another’s negligent act is at least as serious an impairment as the permanent destruction of a physical function, which has always been treated as a compensable item under traditional tort principles (e.g., Simpson v Foundation Co., 201 NY 479 [loss of sexual potency]; see, Robison v Lockridge, 230 App Div 389, 390). Indeed, I can imagine no physical loss that is more central to the quality of a tort victim’s continuing life than the destruction of the capacity to enjoy that life to the fullest.
Unquestionably, recovery of a damage item such as "pain and suffering” requires a showing of some degree of cognitive capacity. Such a requirement exists for the simple reason that pain and suffering are wholly subjective concepts and cannot exist separate and apart from the human consciousness that experiences them. In contrast, the destruction of an individual’s capacity to enjoy life as a result of a crippling injury is an objective fact that does not differ in principle from the permanent loss of an eye or limb. As in the case of a lost limb, an essential characteristic of a healthy human life has been wrongfully taken, and, consequently, the injured party is entitled to a monetary award as a substitute, if, as the majority asserts, the goal of tort compensation is "to restore the injured party, to the extent possible, to the position that would have been occupied had the wrong not occurred” (majority opn, at 254).
Significantly, this equation does not suggest a need to establish the injured’s awareness of the loss. The victim’s ability to comprehend the degree to which his or her life has been impaired is irrelevant, since, unlike "conscious pain and suffering,” the impairment exists independent of the victim’s ability to apprehend it. Indeed, the majority reaches the conclusion that a degree of awareness must be shown only after injecting a new element into the equation. Under the majority’s formulation, the victim must be aware of the loss because, in addition to being compensatory, the award must have "meaning or utility to the injured person.” (Majority opn, at 254.) This additional requirement, however, has no real foundation in law or logic. "Meaning” and "utility” are subjective value judgments that have no place in the law of tort recovery, where the primary goal is to find ways of quantifying, to the extent possible, the worth of various forms of human tragedy.
Moreover, the compensatory nature of a monetary award *260 for loss of enjoyment of life is not altered or rendered punitive by the fact that the unaware injured plaintiff cannot experience the pleasure of having it. The fundamental distinction between punitive and compensatory damages is that the former exceed the amount necessary to replace what the plaintiff lost (see, Hartford Acc. & Indent. Co. v Village of Hempstead, 48 NY2d 218). As the Court of Appeals for the Second Circuit has observed, "[t]he fact that the compensation [for loss of enjoyment of life] may inure as a practical matter to third parties in a given case does not transform the nature of the damages” (Rufino v United States, 829 F2d 354, 362).
Ironically, the majority’s expressed goal of limiting recovery for nonpecuniary loss to compensation that the injured plaintiff has the capacity to appreciate is directly undercut by the majority’s ultimate holding, adopted in the interest of "simplicity,” that recovery for loss of enjoyment of life may be had as long as the injured plaintiff has " 'some level of awareness’ ”, however slight (majority opn, at 255). Manifestly, there are many different forms and levels of awareness, particularly in cases involving brain injury. Further, the type and degree of cognitive functioning necessary to experience "pain and suffering” is certainly of a lower order than that needed to apprehend the loss of the ability to enjoy life in all of its subtleties. Accordingly, the existence of "some level of awareness” on the part of the injured plaintiff says nothing about that plaintiff’s ability to derive some comfort from the award or even to appreciate its significance. Hence, that standard does not assure that loss of enjoyment of life damages will be awarded only when they serve "a compensatory purpose,” as that term is defined by the majority.*
*261 In the final analysis, the rule that the majority has chosen is an arbitrary one, in that it denies or allows recovery on the basis of a criterion that is not truly related to its stated goal. In my view, it is fundamentally unsound, as well as grossly unfair, to deny recovery to those who are completely without cognitive capacity while permitting it for those with a mere spark of awareness, regardless of the latter’s ability to appreciate either the loss sustained or the benefits of the monetary award offered in compensation. In both instances, the injured plaintiff is in essentially the same position, and an award that is punitive as to one is equally punitive as to the other. Of course, since I do not subscribe to the majority’s conclusion that an award to an unaware plaintiff is punitive, I would have no difficulty permitting recovery to both classes of plaintiffs.
Having concluded that the injured plaintiff’s awareness should not be a necessary precondition to recovery for loss of enjoyment of life, I also have no difficulty going on to conclude that loss of enjoyment of life is a distinct damage item which is recoverable separate and apart from the award for conscious pain and suffering. The majority has rejected separate recovery, in part because it apparently perceives some overlap between the two damage categories and in part because it believes that the goal of enhancing the precision of jury awards for nonpecuniary loss would not be advanced. However, the overlap the majority perceives exists only if one assumes, as the majority evidently has (see, majority opn, at 256-257), that the "loss of enjoyment” category of damages is designed to compensate only for "the emotional response caused by the limitation of life’s activities” and "the frustration and anguish caused by the inability to participate in activities that once brought pleasure” (emphasis added), both of which are highly subjective concepts.
In fact, while "pain and suffering compensates the victim for the physical and mental discomfort caused by the injury; * * * loss of enjoyment of life compensates the victim for the limitations on the person’s life created by the injury”, a distinctly objective loss (Thompson v National R. R. Passenger Corp., supra, at 824). In other words, while the victim’s "emotional response” and "frustration and anguish” are elements *262 of the award for pain and suffering, the "limitation of life’s activities” and the "inability to participate in activities” that the majority identifies are recoverable under the "loss of enjoyment of life” rubric. Thus, there is no real overlap, and no real basis for concern about potentially duplicative awards where, as here, there is a properly instructed jury.
Finally, given the clear distinction between the two categories of nonpecuniary damages, I cannot help but assume that permitting separate awards for conscious pain and suffering and loss of enjoyment of life would contribute to accuracy and precision in thought in the jury’s deliberations on the issue of damages. Indeed, the view that itemized awards enhance accuracy by facilitating appellate review has already been expressed by the Legislature in enacting CPLR 4111 (d) and (f) (see, 4 Weinstein-Korn-Miller, NY Civ Prac f 4111.13, at 41-205). In light of the concrete benefit to be gained by compelling the jury to differentiate between the specific objective and subjective elements of the plaintiff’s nonpecuniary loss, I find unpersuasive the majority’s reliance on vague concerns about potential distortion owing to the inherently difficult task of computing the value of intangible loss. My belief in the jury system, and in the collective wisdom of the deliberating jury, leads me to conclude that we may safely leave that task in the jurors’ hands.
For all of these reasons, I approve of the approach that the trial court adopted in its charge to the jury. Accordingly, I would affirm the order below affirming the judgment.
Judges Simons, Kaye, Hancock, Jr., and Bellacosa concur with Chief Judge Wachtler; Judge Titone dissents and votes to affirm in a separate opinion in which Judge Alexander concurs.
Order, insofar as appealed from, modified, with costs to defendants, by granting a new trial on the issue of nonpecuniary damages of plaintiff Emma McDougald and, as so modified, affirmed.

 Another problem with the majority’s analysis is the absence of any discussion about the time frame to be used in measuring the award of damages for plaintiff’s loss of enjoyment of life. Damages for "pain and suffering” are directly correlated to the plaintiff’s experience of "pain and suffering” and thus are routinely awarded only for that period of time during which the injured had sufficient cognitive powers to have that experience. Damages for loss of enjoyment of life, in contrast, are awarded as a monetary replacement for the plaintiff’s diminished ability to participate in the pleasures and pursuits of healthy living during the remainder of his or her natural life span. Thus, a legitimate question exists as to whether the plaintiff is entitled to recover an award representing his entire lifetime’s loss notwithstanding that he was conscious of the loss for only a few moments before lapsing into cognitive oblivion. Furthermore, in view of the majority’s conclusion that an award is not truly compensatory if it cannot be enjoyed by the injured party, an additional question arises as to whether *261 the cognitive capacity of the plaintiff must be measured at the time when the award is to be given rather than at some earlier point before the commencement of trial.